Layne Friedrich (Bar No. 195431)
  Layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
  Drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation, | Case No.: 2:12-cv-00428-KJM-KJN |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| ALL HYUNDAI ISUZU KIA & NISSAN AUTO RECYCLING, INC., a California corporation, | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)** |
| Defendant. | |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendant All Hyundai Isuzu Kia & Nissan Auto Recycling, Inc. ("Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, Defendant operates two automobile dismantling and used auto parts facilities located at 3370 Sunrise Boulevard (All Hyundai #1 Facility) and 3750 Recycle Road, Number 2 ("All Hyundai #2 Facility) in Rancho Cordova, California (collectively "All Hyundai Facilities" "or "Facilities");

**WHEREAS**, CSPA alleges that All Hyundai Isuzu Kia & Nissan Auto Recycling, Inc. is the owner and/or operator of the All Hyundai Facilities;

**WHEREAS,** discharges from the All Hyundai Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301 (a) and 402, 33 U.S. C. §§ 1311 (a), 1342;

**WHEREAS**, on December 12, 2011, CSPA served Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit ("Notice Letter") under Sections 505 (a) and (b) of the CWA, 33 U.S.C. § 1365 (a) and (b). The Notice Letter alleged violations of Sections 301 (a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 (a) and 1342, and violations of the Storm Water Permit;

/////

**WHEREAS**, on February 20, 2012, CSPA filed a complaint against Defendant in the United States District Court, Eastern District of California (Case No. 2:12-cv-00428-KJM-KJN) (hereinafter "Complaint");

**WHEREAS**, CSPA alleges Defendant to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendant denies all allegations in the Notice Letter and Complaint;

**WHEREAS**, CSPA and Defendant have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the All Hyundai Facilities are located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

6.      Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties

agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

7.     The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

8.     This Consent Decree will terminate thirty (30) days after the final payment required by Paragraph 30 has been made and all monetary obligations of Defendant are satisfied, unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree.

## II.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Control Measures

9.     In addition to maintaining the current Best Management Practices ("BMPs") at the Facilities, Defendant shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Defendant shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facilities sufficient to achieve the limits in Table 1 below.

10.    The minimum BMPs to be developed and implemented are set forth below.

#### a.  Automobile Fluid Draining Operations

i.    By the Effective Date, Defendant shall designate a portion of each of the All Hyundai Facilities as "Designated Fluid Draining Areas" and shall ensure that all fluid draining operations are conducted in the Designated Fluid Draining Areas.

ii.    Within forty-five (45) days[1] of the Effective Date, the Designated Fluid Draining Areas shall be on a paved surface, under cover, and shall be self-contained and have structural BMPs to ensure that fluids do not leave the Designated Fluid Draining Areas.

iii.    Within forty-five (45) days of the Effective Date, the Defendant shall provide secondary containment in any area where drained fluids are stored.

---

[1] All references to "days" in this Consent Decree are to calendar days unless otherwise specified.

iv.     Within forty-five (45) days of the Effective Date, Defendant shall post adequate signage throughout the Facilities in English, Spanish, and other applicable languages to ensure employees know and understand that fluids cannot be drained in areas other than in the Designated Fluid Draining Areas.

v.     By the Effective Date, Defendant shall ensure that appropriate and fully stocked spill kits are available in the Designated Fluid Draining Areas.

**b.  Impervious Surfaces**

i.     Patching: By the Effective Date, Defendant shall patch all cracks in impervious ground surfaces at both Facilities.

ii.     Sweeping: By the Effective Date, Defendant shall develop and implement a plan for both Facilities to ensure manual sweeping of all paved surfaces in the dismantling bays on a daily basis, manual sweeping of the remainder of the paved areas during the dry season on a weekly basis, and manual sweeping within forty-eight (48) hours of any predicted rain event during the Wet Season. Defendant shall keep a log of all sweeping done at the Facilities.

iii.     Berms: By the Effective Date, Defendant shall install rubber bay door thresholds, not to exceed one-half inch (1/2") in height, along the base of the bay doors of the All Hyundai Facilities' roofed areas to prevent any contaminants spilled within those areas from exiting into the unroofed portions of the yards.

**c.  General BMPs**

i.     By the Effective Date, all vehicles at the Facilities will be drained of all fluids prior to being placed in the yard, and all such vehicles shall have steel drip-pans with oil absorbent pads under each engine compartment and under transmissions. This does not apply to vehicles wherein the engines and transmissions have been removed during initial processing and inventory and all fluids have been drained.

ii.     By the Effective Date, Defendant shall store all engines, transmissions, radiators, tire rims, and other related metal materials that have been removed from automobiles under cover at both Facilities such that storm water does not come into contact with these materials.

/////

iii.     By the Effective Date, Defendant shall ensure that all secondary containment containers used at the Facilities are not leaking.

iv.     Beginning on the Effective Date, Defendant shall ensure that all vehicle hoods at the Facilities are closed at least one (1) hour prior to the start of forecast precipitation in Rancho Cordova with a likelihood of occurrence of 50% or greater by NOAA. If vehicles in the yards do not have a hood, Defendant shall provide alternative cover for the engine compartments.

v.     Defendant shall regularly monitor and maintain the Facilities' Storm Water Conveyance System and structural BMPs in a manner that ensures they are kept free of debris and materials not related to the control and treatment of storm water (e.g. wood, metal, concrete and other debris).

vi.     Defendant shall conduct daily inspections of the gravel yard at All Hyundai Facility #1 and take remedial action where necessary such as removing and properly disposing of stained or contaminated gravel or soil.

### d.  Minimization of Discharge Locations

i.     By the Effective Date, Defendant shall continue to ensure that storm water is only discharged from the three (3) drain inlets at the All Hyundai #1 Facility and direct storm water towards the designated discharge points. See Map attached as Exhibit A with designated discharge points.

ii.     By the Effective Date, Defendant shall install structural BMPs to ensure that no storm water leaves the All Hyundai #1 Facility through the northern fence. Defendant shall inspect this area in August prior to each Wet Season and during routine inspections to ensure no repairs to the installed BMPs are necessary. If any repairs are needed, Defendant shall complete the necessary repairs prior to October 1 of that year.

iii.     By the Effective Date, Defendant shall ensure that storm water is only discharged from the two (2) drain inlets at the All Hyundai #2 Facility. See Map attached as Exhibit B with designated discharge points.

/////

/////

/////

**B.      Reduction of Pollutants in Discharges**

11.      <u>Numeric Limits and Contaminant Reduction</u>. Contaminants in discharges shall not exceed the limits in Table 1 ("Numeric Limits").[2] The presence of any contaminant in any discharge from the All Hyundai Facilities in excess of, or outside the range of, the Numeric Limits in Table 1 is a breach of this Consent Decree.

**Table 1. Numeric Limits for All Hyundai Facilities Discharges**

| Contaminant | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Lead | **0.095 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Zinc | **0.130 mg/L** | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |

12.      <u>Action Plan for Table 1 Exceedances</u>. If any storm water sample collected at the All Hyundai #1 Facility or the All Hyundai #2 Facility contains a level of contaminant above the Table 1 Numeric Limits, Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") at the All Hyundai #1 Facility or the All Hyundai #2 Facility, respectively. In any year that an Action Plan is required, it shall be submitted by June 1 following the Wet Season during which the exceedance occurred.

13.      <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating storm water, that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1

---

[2] Several of the Numeric Limits are hardness dependent.  The hardness dependent limits are in bold. The 2008 EPA Benchmark based limits expressed assume hardness of 101 mg/l $CaCO_3$. Defendant shall adjust the limit using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit and/or the California Toxics Rule as applicable.

1  (prior to the next Wet Season).

2      14.    <u>Action Plan Review</u>. CSPA shall have thirty (30) days upon receipt of Defendant' Action

3  Plan to provide Defendant with comments. Within fifteen (15) days of Defendant' receipt of CSPA's

4  comments on the Action Plan, Defendant shall accept and incorporate CSPA's comments of

5  recommended BMPs into the Action Plan, or shall provide CSPA with a written explanation if

6  Defendant refuses to develop and/or implement any of CSPA's recommended BMPs. Disputes

7  regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other

8  BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved

9  pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

10      15.    When an Action Plan is completed and approved by CSPA, Defendant shall revise their

11  Storm Water Pollution Prevention Plan ("SWPPP") and Monitoring & Reporting Plan ("M&RP") as

12  applicable within thirty (30) days to reflect the changes required by the Action Plan.  Defendant shall

13  notify CSPA in writing when the Action Plan has been completely implemented.

14  **C.    Storm Water Sampling**

15      16.    <u>Sampling Frequency and Methodology</u>. During the life of this Consent Decree,

16  Defendant shall collect storm water samples from all discharge points described in paragraph 16(b) for

17  at least four (4) rain events per Wet Season. If pollutant level(s) in samples collected at a particular

18  discharge point are below the Numeric Limits in Table 1 for zinc for two (2) consecutive sampling

19  events, Defendant may discontinue the analysis of samples from that location for zinc.

20      a.    By the Effective Date, Defendant shall prepare all discharge points at both Facilities

21  for sampling by constructing a small pour over, pipe outfall, or basin area from which to sample at each

22  discharge point.

23      b.    Samples shall be collected at discharge points 1, 2, and 3 at the All Hyundai #1 Facility

24  Facility and any other discharge point(s) at the All Hyundai #1 Facility.

25      c.    Samples shall be collected at discharge points 1 and 2 at the All Hyundai #2 Facility

26  and any other discharge point(s) at the All Hyundai #2 Facility.

27      d.    Defendant shall analyze each storm water sample for the contaminants set forth in

28  Table 1.

e.     A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

f.     The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

g.     All samples collected from the Facilities shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.

h.     Defendant shall request that sample-analysis results be reported to it within ten (10) days of laboratory receipt of the sample if there is no additional "rush" costs, otherwise Defendant shall request the laboratory report the results to Defendant as soon as possible under "standard" costs.

i.     Defendant shall provide the complete lab results of all samples collected at the Facilities to CSPA within five (5) business days of receiving the results.

**D.     Employee Training**

17.     Within thirty (30) days of the Effective Date, Defendant shall develop and implement a training program, including any training materials needed for effective implementation of the training program, to ensure (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Strom Water Permit and this Consent Decree ("Training Program"). At a minimum the Training Program shall require at least the following:

a.     <u>Non-Storm Water Discharges</u>. The Defendant shall train all employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-stormwater discharges can result from improper draining of automobile fluids, and how to detect and prevent non-stormwater discharges;

b.     <u>BMPs</u>. The Defendant shall train all employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facilities;

c.     <u>Storm Water Sampling</u>. The Defendant shall designate an adequate number of employees necessary to collect storm water samples from each discharge location as required by this

Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

18.     Training shall be provided by a private consultant or a representative of Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated annually, or as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facilities' SWPPP and M&RP. All new staff will receive this training before assuming responsibilities for implementing the SWPPP and/or M&RP.

19.     The Defendant shall maintain training records to document compliance with this section, and shall provide CSPA with a copy of these records within fourteen (14) days of receipt of a written request.

**E.     Storm Water Pollution Prevention and Monitoring and Reporting Plans**

20.     Within thirty (30) days after the Effective Date, Defendant shall revise their SWPPP and their M&RP to:

      a.     Incorporate the requirements of the Storm Water Permit, and this Consent Decree;

      b.     Identify the individuals responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe: collecting storm water samples);

      c.     Create a visual inspection checklist that must be used by trained personnel when conducting the visual observations and monitoring of storm water required under the Storm Water Permit and/or under this Consent Decree.

      d.     Revise site map and site description to reflect current site conditions to include at least the minimum: drainage within each of the Facilities, discharge points, BMPs and locations, and potential pollutant sources and associated pollutants.

21.     <u>Commenting on the SWPPP and M&RP Revisions</u>. The Defendant shall submit the revised SWPPP and M&RP to CSPA for review and comment within thirty (30) days after the Effective Date. CSPA shall provide comments, if any, to the Defendant within thirty (30) days of receipt of the SWPPP and M&RP. The Defendant shall incorporate Plaintiff's comments into the SWPPP and M&RP

1   or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving

2   CSPA's comments. Any disputes over the adequacy of the revised SWPPP and M&RP shall be resolved

3   pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

4        22.   <u>Additional Revisions to SWPPP and M&RP</u>. The Defendant shall revise the SWPPP and

5   M&RP if there are any changes in the Facilities' operations, including but not limited to changes to

6   storm water discharge point(s) or changes or additions to the BMPs at the Facilities. The Defendant shall

7   submit any revised SWPPP and M&RP to CSPA for review and comment within five (5) days of

8   completion. CSPA shall provide comments, if any, to the Defendant within thirty (30) days of receipt of

9   any revised SWPPP and M&RP. The Defendant shall incorporate Plaintiff's comments into any revised

10   SWPPP and M&RP, or shall justify in writing why any comment is not incorporated within thirty (30)

11   days of receiving comments. Any disputes as to the adequacy of the SWPPP and M&RP shall be

12   resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III

13   below.

14     **F.**   **Compliance Monitoring and Reporting**

15        23.   <u>Site Inspections</u>. CSPA and its representatives may conduct up to two (2) Wet Season site

16   inspections and two (2) dry season site inspections per year at each of the All Hyundai Facilities during

17   the life of this Consent Decree. The site inspections shall occur during normal business hours and CSPA

18   shall provide Defendant with twenty-four (24) hours notice prior to each Wet Season site inspection and

19   forty-eight (48) hours notice prior to each dry season site inspection.

20        24.   During the site inspections, CSPA and/or its representatives shall be allowed access to the

21   All Hyundai Facilities' SWPPPs, M&RPs, and other monitoring records, reports, and sampling data for

22   the All Hyundai Facilities. During the site inspections, CSPA and/or its representatives may collect

23   samples of discharges from the All Hyundai Facilities. A certified California laboratory shall analyze

24   storm water samples collected by CSPA and copies of the lab reports shall be provided to Defendant

25   within five (5) business days of receipt.

26        25.   <u>Compliance Monitoring and Oversight</u>. Defendant agrees to partially defray fees and

27   costs incurred by CSPA monitoring Defendant's compliance with this Consent Decree in the amount of

28   Two Thousand Dollars ($2,000.00). Payment shall be made pursuant to Paragraph 30 of this Consent

Decree.

26. <u>Action Plan Payments</u>. Anytime Defendant is required to submit an Action Plan to CSPA, Defendant shall make an additional compliance monitoring payment in the amount of One Thousand Dollars ($1,000.00) upon submission of the Action Plan. Action Plan payments are to be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

27. <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Defendant shall copy CSPA on all documents related to water quality at the All Hyundai Facilities that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to CSPA concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to CSPA within three (3) business days of receipt by Defendant.

**G.    Environmental Project, Reimbursement of Litigation Fees and Costs, Payments, and Stipulated Penalties**

28. <u>Environmental Mitigation Project</u>. To remediate environmental harms resulting from the non-compliance with the Storm Water Permit as alleged in the Amended Complaint, Defendant agrees make a payment of Six Thousand Dollars ($6,000.00) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed. Payment shall be made as set forth in Paragraph 30 of this Consent Decree.

29. <u>Fees and Costs</u>. To partially reimburse CSPA for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing the lawsuit, and negotiating this Consent Decree, Defendant shall pay a total of Twenty-Nine Thousand and Four Hundred Dollars ($29,400.00).  Payment shall be made as set forth in Paragraph 30 of this Consent Decree.

30. Defendant's monetary obligations in paragraphs and 25, 28, and 29 total Thirty-Seven Thousand and Four Hundred Dollars ($37,400.00) and shall be made as follows:

1    Five Thousand Dollars ($5,000.00) due by by April 15, 2013,

2    Twenty-four (24) monthly payments of One Thousand Three Hundred and Fifty Dollars

3    ($1,350.00), with the first monthly payment due by June 25, 2013.

4  All payments shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and

5  delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly

6  Avenue, San Francisco, California 94129.

7    31.    Stipulated Payment. The Defendant shall make a stipulated payment of Twenty Five

8  Dollars ($25.00) for each missed deadline included in this Consent Decree, after meeting and conferring

9  as required below if Defendant disputes a stipulated payment is required. Payments for a missed

10 deadline shall be made for the restoration and/or improvement of the watershed in the area affected by

11 the Defendant's discharges and shall be made to: The Rose Foundation for Communities and the

12 Environment, and mailed via certified mail or overnight delivery to 6008 College Avenue Suite 10,

13 Oakland, California 94618 attention Tim Little. Upon demand, the Defendant agree to make the

14 stipulated payment within fifteen (15) days of a missed deadline and make the payment via overnight

15 delivery or by certified mail. The Defendant shall provide CSPA with a copy of each such payment at

16 the time it is made.

17    32.    Interest Payments. In the event of late payment of any of the sums due under this Consent

18 Decree, the Defendant shall pay ten percent (10%) APR interest to CSPA, which shall accrue from the

19 first day past the date the sum was due until the date the Defendant tenders payment. All such payments

20 shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by

21 certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San

22 Francisco, California 94129.

23 **III.    DISPUTE RESOLUTION**

24    33.    This Court shall retain jurisdiction over this matter until the termination date defined in

25 Paragraph 8 above for the purposes of implementing and enforcing the terms and conditions of this

26 Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the

27 provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with

28 all available legal and equitable remedies, including contempt.

34.     <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention

35.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Eastern District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

36.     <u>Burden of Proof</u>. In the event of any disagreement or dispute between CSPA and Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, including in any formal or informal proceeding brought to enforce the terms of this Consent Decree, Defendant shall bear the burden of demonstrating that its BMPs, collectively, constitute Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT") (collectively "BAT/BCT") for the Facilities, or that they are in compliance with the terms of this Consent Decree. CSPA shall not be required to prove that Defendant' BMPs do not constitute BAT/BCT.

37.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §1365 and § 1319, and case law interpreting that standard.

**IV.   <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

38.     <u>CSPA's Release</u>. Upon the Effective Date of this Consent Decree, CSPA, on its own behalf and on behalf of its current and former officers, directors, employees, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendant and each of its current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives from, and waives all claims which arise

from or pertain to this action, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or claims asserted in CSPA's Notice Letter and Complaint up to the Effective Date.

39.     Defendant's Release. Upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases CSPA (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to CSPA's Notice Letter and Complaint up to the Effective Date.

40.     Nothing in this Consent Decree limits or otherwise affects any party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm water discharges from the All Hyundai Facilities occurring or arising after the Effective Date of the Consent Decree but specifically excluding the discharges and all other matters addressed by this Consent Decree.

41.     In the event Defendant seeks to terminate coverage under the Storm Water Permit, Defendant's obligation under this Consent Decree shall cease only upon approval by the Regional Board of a Notice of Termination and satisfaction of all Defendant's monetary obligations in Paragraphs 25, 28, and 29. Defendant shall send a copy CSPA of any Notice of Termination it submits to the Regional Board or State Water Resources Control Board at the time it submits it to the regulatory agency.

## V.     **MISCELLANEOUS PROVISIONS**

42.     No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an

admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.    <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

44.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

45.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

46.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail or courier as follows:

<u>If to Plaintiff:</u>

Drevet Hunt
        Drev@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

With copies to:

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
        Deltakeep@me.com
3536 Rainier Avenue
Stockton, California 95204

<u>If to Defendant</u>:

Michael Vinding
     mvinding@bradyvinding.com
Brady & Vinding
400 Capitol Mall, Suite 2640
Sacramento, California 95814

With copies to:

Chris Castro
     info@ahikn.com
All Hyundai Isuzu Kia & Nissan Auto Recycling, Inc.
3750 Recycle Road, #2, 3370 Sunrise Boulevard
Rancho Cordova, California 95742

Notifications of communications shall be deemed submitted the next business day after having been deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Settling Parties may agree to transmit documents electronically or by facsimile.

48.    <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

49.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

51.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

52.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

54.     The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

55.     The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.


APPROVED AS TO CONTENT


Dated:  March 7,      2013          By:    /s/Bill Jennings (original signature retained by
                                           Plaintiff's counsel)
                                           Bill Jennings
                                           California Sportfishing Protection Alliance


Dated:  March 8,      2013          By:    /s/Chris Castro (original signature retained by
                                           Defendant's counsel)
                                           Chris Castro
                                           All Hyundai Isuzu Kia & Nissan Auto Recycling,
                                           Inc.

APPROVED AS TO FORM

LAWYERS FOR CLEAN WATER, INC.

Dated:  March 8,      2013          By:     /s/Layne Friedrich
                                            Layne Friedrich
                                            Attorney for Plaintiff

BRADY & VINDING

Dated:  March 8,      2013          By:     /s/Michael Vinding (as authorized on March 8,
                                            2013)
                                            Michael Vinding
                                            Attorney for Defendant

Good cause appearing, the parties having stipulated and agree, and the position of the United

States having been recorded in the letter filed on April 26, 2013 (ECF No. 15), IT IS SO

ORDERED.

Dated:  June 17, 2013.


_____
UNITED STATES DISTRICT JUDGE

**Exhibit A**

## 3. Facility Map



**Exhibit B**

## 3. Facility Map

